UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BRIGADOON ASSOCIATES LIMITED PARTNERSHIP, | § § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-10-4687 |
| | § | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION (FNMA), *et al*, | § § § | |
| Defendants. | § § | |

**OPINION AND ORDER**

Pending before the Court is Plaintiff Brigadoon Associates Limited Partnership's ("Brigadoon") Motion to Remand and for Costs (Doc. 6), as well as Defendants Federal National Mortgage Association d/b/a Fannie Mae ("Fannie Mae"), PNC Financial Services Group, Inc. d/b/a PNC Real Estate, and PNC Multifamily Mortgage, LLC's (together "PNC") response (Doc. 7) and Brigadoon's reply (Doc. 8). Upon review and consideration of this motion, the response and reply thereto, the relevant legal authority, and for the reasons explained below, the Court finds that Brigadoon's motion should be granted.

I.  Background and Relevant Facts

This case arises out of the settlement agreement between Plaintiff Brigadoon and Defendants of a lawsuit originally filed in state court (the "Original Lawsuit"). (Doc. 6 at 1.)

On June 2, 2006, Brigadoon executed a promissory note in the amount of $23,944,000.00 (the "Note"), in connection with its purchase of a residential property known as the Bristol Apartments at 1221 Redford Road in Houston, Texas (the "Property"). (Doc. 7 at 3.) The Note was secured by the Multifamily Deed of Trust, Assignment of Rents and Security Agreement and Fixture Filing (the "Deed of Trust"). (Doc. 7-1.) In the Original Lawsuit, Brigadoon alleged

that Defendants breached their prior agreements by demanding payment from Brigadoon of over $2.3 million, approximately 10% of the loan balance. (Doc. 6 at 1.)

In November 2009, Brigadoon received a letter from PNC listing certain repairs that it needed to make on the Property and demanding "comprehensive maintenance proposals" explaining how the repairs would be made. (Doc. 1-1 at 8.) Brigadoon met with several contractors and sought bids for the repairs. (*Id*.) Brigadoon says that though it "communicated with Defendant PNC regularly concerning these matters, . . . at no time did PNC indicate that either PNC or Fannie Mae were dissatisfied with the way Plaintiff was addressing the maintenance items." (*Id*.)

On March 10, 2010, Defendant PNC demanded Brigadoon deposit $2,312,456.00, equal to 125% of the estimated cost of repairing the Property. (*Id*.) Defendant Fannie Mae warned that Brigadoon would be in default if it did not make the deposit by March 25, 2010. (*Id*. at 9.) Brigadoon responded that "no agreement in the Loan Documents requires such a payment." (*Id*.) On June 14, 2010, Fannie Mae threatened to foreclose the Property, as well as additional personal property pledged as collateral under the Deed of Trust, including the escrow funds, unless Brigadoon paid the balance immediately. (Doc. 7 at 3.) The escrow funds were to be used to pay for property taxes, insurance, repairs, and other expenses associated with the Property. (Doc. 8-1 at 4.)

On June 29, 2010, Plaintiff Brigadoon filed the Original Lawsuit in state court and obtained a temporary restraining order to prevent foreclosure of the Property. (Doc. 6 at 2.) In July, 2010, the parties negotiated a Settlement Agreement and Release (the "Settlement Agreement") under which Brigadoon "would not contest the foreclosure of the Property, would pay another $1.15 million to Fannie Mae, and would dismiss the Original Lawsuit." (*Id*.) In

exchange, Fannie Mae agreed to "release Plaintiff from all obligations under the original loan documents," and stipulate that "$1.15 million was all of the money it would ever receive from Plaintiff." (Doc. 6-1 at ¶¶ 1 and 3.) On July 22, 2010, the parties executed the Settlement Agreement. (Doc. 6-1 at 1.) Fannie Mae, however, did not release Brigadoon's escrow funds. (Doc. 6 at 2.)

On November 22, 2010, Brigadoon filed this second lawsuit seeking the return of $700,317.91 in escrow monies. (Doc. 1-1.) On November 23, 2010, Defendants removed the case to this Court based on diversity jurisdiction. (Doc. 1 at 2.) Brigadoon now moves for remand and costs. (Doc. 6.)

II. Standard of Review

The Judiciary Act of 1789 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). In other words, defendant may remove a case only if the plaintiff could have originally initiated the suit in federal court. *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citing 28 U.S.C. § 1441(b)). Federal district courts have original jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Whether a claim arises under federal law is generally determined by the "well-pleaded complaint rule." *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 543 (5th Cir. 2005).

Federal diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000.00 . . . and is between citizens of different States." 28 U.S.C. § 1332(a); *Addo v. Globe Life and Accident Ins. Co.*, 230 F.3d 759, 761 (5th Cir. 2000). "Defendants may

remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State." *Lincoln Property Co. v. Roche*, 546 U.S. 81, 84 (2005). Where federal diversity jurisdiction exists, a defendant may remove an action from a State court to the "district court of the United States for the district and division within which such action is pending . . . ." *Allen v. R & H Oil and Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1996). The removing party bears the burden of establishing federal jurisdiction. *Laughlin v. Prudential Ins. Co.*, 882 F.2d 187, 190 (5th Cir. 1989).

After removal, a plaintiff may move for remand and, if "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Removal statutes are construed "strictly against removal and for remand." *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–9 (1941). All "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). Once a motion to remand has been filed, the burden is on the removing party to establish that federal jurisdiction exists. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). All factual allegations are evaluated in the light most favorable to the plaintiffs. *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005).

A motion to dismiss is the standard procedural mechanism for enforcing a forum-selection clause that a party to the agreement has violated in filing suit. *Accelerated Christian Educ., Inc. v. Oracle Corp.*, 925 S.W.2d 66, 70 (Tex. App.—Dallas 1996, *no writ*). However, the Fifth Circuit has also granted motions to remand when enforcing forum selection clauses specifying exclusive jurisdiction in state court. *See, e.g., GP Plastics Corp v. Interboro*

*Packaging Corp.*, 108 Fed. Appx. 832, 833 (5th Cir. 2004).

III.  Discussion

Personal jurisdiction is a waivable right.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985).  A forum selection clause is one way in which a litigant may expressly or impliedly consent to personal jurisdiction.  (*Id.*)  When parties freely negotiate a forum selection clause in an agreement, courts generally enforce the clause unless there is a compelling reason not to enforce it.  *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972).  Courts evaluate four factors to determine whether enforcement would be unreasonable: (1) there is a strongly contravening precedent or statute in the forum selected; (2) the party arguing against enforcement presents clear evidence that enforcement would be unreasonable or unjust, to the extent it was effectively denied its day in court because of grave difficulty and inconvenience; (3) the party arguing against enforcement demonstrates that the clause was invalid because of fraud or overreaching; or (4) enforcement will contravene a strong public policy of the forum state.  (*Id.*)  Unless the challenger defeats the forum selection clause by showing one or more of these factors, enforcement of the clause does not violate due process.  (*Id.*).

A party's consent to jurisdiction in one forum does not necessarily waive its right to have an action heard in another.  *City of New Orleans v. Mun. Admin. Services, Inc.*, 376 F.3d 501, 504 (5th Cir. 2004).  For a forum selection clause to be exclusive, it must go beyond merely establishing that a particular forum will have jurisdiction and must clearly demonstrate the parties' intent to make that jurisdiction exclusive.  (*Id.*)

Defendants argue that there are two separate contracts, the Deed of Trust and the Settlement Agreement, at issue, and that each has a different choice of venue provision.  (Doc. 7 at 1.)  Defendants also contend that the Deed of Trust does not contain any language

implying waiver of their right to remove an action arising out of the Deed of Trust. (Doc. 7 at 6.)

The Deed of Trust specifies that:

> The state and federal courts and authorities with jurisdiction in the Property Jurisdiction shall have exclusive jurisdiction over all controversies which shall arise under or in relation to the Note, any security for the Indebtedness, or any other Loan Document. Borrower irrevocably consents to service, jurisdiction, and venue of such courts for any such litigation . . . .

(Doc. 7-2 at 11, ¶ 30(b).)

Brigadoon points to the later Settlement Agreement, which contains a forum selection clause specifying that disputes arising out of the Agreement will be litigated exclusively in the state courts of Harris County, Texas:

> 19. **Governing Law and Exclusive Jurisdiction.** THIS AGREEMENT SHALL BE GOVERNED IN ALL RESPECTS, INCLUDING VALIDITY, INTERPRETATION AND EFFECT, BY, AND SHALL BE ENFORCEABLE IN ACCORDANCE WITH, THE LAWS OF THE STATE OF TEXAS, WITHOUT REGARD TO OR APPLICATION OF CONFLICT OF LAW RULES OR PRINCIPLES. SHOULD ANY DISPUTE ARISE CONCERNING THIS AGREEMENT OR THE CLAIMS RELEASED HEREBY, OR ARISING OUT OF OR RELATED THERETO, SUCH CLAIMS WILL BE LITIGATED EXCLUSIVELY IN THE STATE COURTS OF HARRIS COUNTY, TEXAS, WHICH SUCH COURTS SHALL HAVE THE EXCLSUIVE [sic] JURISDICTION AND VENUE OF THESE MATTERS.

(Doc. 6-1 at ¶ 19.) The Settlement Agreement also contains a waiver of any right to change this exclusive jurisdiction and venue:

> 20. **Waiver of Personal Jurisdiction and Venue.** All actions or proceedings with respect to, arising directly or indirectly in connection with, out of, related to, or from this Agreement shall be litigated exclusively in the Harris County State District Court. For any such litigation, the Parties hereby submit to the jurisdiction of the Harris County State District Courts, and hereby waive any rights each may have to transfer or change this jurisdiction or venue of any such litigation brought against them by any other

Party to this Agreement.

(*Id.* at ¶ 20.)

Defendants argue that Brigadoon is bound by its claims in this case that Defendants breached both the Deed of Trust and the Settlement Agreement. (Doc. 7 at 7.) As a result, Defendants believe their removal was proper. (*Id.*)

However, the Settlement Agreement settled the breach of contract claim in the Original Lawsuit. (Doc. 6 at 3.) The Settlement Agreement clearly states that all subsequent claims "including, but not limited to, obligations, rights, or claims under the Loan Agreements . . ." are governed by it. (Doc. 6-1 at ¶¶ 3 and 4.) A plain reading of the forum selection and waiver clauses indicate that the parties agreed to an exclusive forum and waived any right to federal diversity jurisdiction by the Settlement Agreement. (*Id.* at ¶¶ 19 and 20.) Defendants provide no evidence supporting any of the four *Bremen* factors.

Defendants contend that remand would be improper because the forum selection clause does not explicitly waive their right to remove. "A party to a contract may waive a right of removal provided the provision of the contract makes clear that the other party to the contract has the 'right to choose the forum' in which any dispute will be heard." *Waters v. Browning-Ferris Indus., Inc.*, 252 F.3d 796, 797 (5th Cir. 2001), *quoting City of Rose City v. Nutmeg Ins. Co.*, 931 F.2d 13, 16 (5th Cir. 1991). A waiver of removal rights need not be explicitly stated; rather, the clause need only "make clear" that one of the parties has the "right to choose" the forum. *Id.* The waiver clause at issue here clearly specifies that jurisdiction is proper in the Harris County State District Court and further states that all parties waive their rights to transfer venue or change that jurisdiction. (Doc. 6-1 at ¶ 20.)

"An order remanding the case may require payment of just costs and any actual expenses,

including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).  Brigadoon argues that attorney fees are appropriate because the Defendants lacked "an objectively reasonable basis for seeking removal." (Doc. 6 at 13.)  Defendants removed this case despite an agreed forum selection clause precluding removal.  (*Id*. at 14.)  The Court finds that Defendants' removal in this case was not objectively reasonable and therefore that an award of attorneys' fees is appropriate under Fed. R. Civ. P. 11(b).

Brigadoon requests attorneys' fees in the amount of $11,243.75 for preparing the Motion to Remand.  (Doc. 6 at 15.)  The Court finds this amount justified.

IV.  Conclusion

Accordingly, the Court hereby **ORDERS** that Plaintiff Brigadoon Associates Limited Partnership's Motion to Remand and for Costs (Doc. 6) is **GRANTED**.  The case is **REMANDED** to the 164th Judicial District Court of Harris County, Texas, where it was given cause number 2010-69561.

The Court further **AWARDS** Brigadoon attorneys' fees in the amount of $11,243.75.

SIGNED at Houston, Texas, this 25th day of July, 2011.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE